IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| BARTON L. LAMBDIN, | ) | Civ. No. 16-00004 HG-KJM |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| MARRIOTT RESORTS HOSPITALITY | ) | |
| CORPORATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**ORDER GRANTING DEFENDANT MARRIOTT RESORTS HOSPITALITY
CORPORATION'S MOTION FOR SUMMARY JUDGMENT (ECF No. 39)**

Plaintiff Barton Lambdin has filed a Complaint against
Marriott Resorts Hospitality Corporation ("Marriott Resorts")
alleging claims of discrimination and retaliation in violation of
Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et
seq.*, the Americans With Disabilities Act, 42 U.S.C § 12203, and
the Hawaii Whistleblower's Protection Act, H.R.S. § 378-62.

Defendant Marriott Resorts moves for summary judgment as to
each of Plaintiff's claims.

Plaintiff withdrew his Title VII discrimination claim.

Plaintiff opposes summary judgment on his remaining claims.

Defendant Marriott Resorts' Motion for Summary Judgment (ECF
No. 39) is **GRANTED**.

1

## PROCEDURAL HISTORY

On January 1, 2016, Plaintiff Barton Lambdin filed a complaint. (ECF No. 1).

On March 22, 2016, Plaintiff filed a FIRST AMENDED COMPLAINT. (ECF No. 6).

On April 21, 2016, Defendant filed MARRIOTT RESORTS HOSPITALITY CORPORATION'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT. (ECF No. 11).

On June 14, 2017, Defendant filed DEFENDANT MARRIOTT RESORTS HOSPITALITY CORPORATION, INC.'S MOTION FOR SUMMARY JUDGMENT (ECF No. 39) and DEFENDANT MARRIOTT RESORTS HOSPITALITY CORPORATION'S CONCISE STATEMENT OF FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (ECF No. 40).

On July 14, 2017, Plaintiff filed PLAINTIFF BARTON L. LAMBDIN'S RESPONSES TO DEFENDANT MARRIOTT RESORTS HOSPITALITY CORPORATION'S CONCISE STATEMENT OF FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (ECF No. 43) and PLAINTIFF BARTON L. LAMBDIN'S MEMORANDUM IN OPPOSITION TO DEFENDANT MARRIOTT RESORTS HOSPITALITY CORPORATION INC.'S MOTION FOR SUMMARY JUDGMENT (ECF No. 44).

On August 7, 2017, Defendant Marriot Resorts filed its reply. (ECF No. 40).

On August 28, 2017, a hearing was held on Defendant's Motion for Summary Judgment. (ECF No. 50).

**BACKGROUND**

**Plaintiff's Employment With Marriott Resorts**

Plaintiff alleges that in July 2007, Defendant Marriott Resorts took over a property located at Kauai Lagoons in Kauai. (Deposition of Barton Lambdin, dated Mar. 9, 2017 ("Mar. 9 Lambdin Depo.") at pp. 16-17, attached at pp. 2-3 of Ex. A to Def.'s Concise Statement of Facts ("CSF"), ECF No. 40-3). Plaintiff alleges that he worked as a pesticide applicator for the previous owner of the property, and was kept as an employee when Defendant Marriott Resorts took control of the property. (Id. at p. 17). Plaintiff states that David Nagao ("Nagao") was his supervisor from the time Defendant took over the property. (Id. at p. 19). At some time in 2007, Plaintiff was seriously injured while spraying pesticide on the grounds. (Id. at p. 18). Defendant changed Plaintiff's position to Groundskeeper II soon after the 2007 pesticide spray accident. (Id.)

Plaintiff continued employment with Defendant until his suspension on February 27, 2014. (Disciplinary Action Form at p. 1, attached as Ex. 4 to Pla.'s CSF, ECF No. 43-5). On March 5, 2014, Defendant terminated Plaintiff's employment. (Def.'s CSF at p. 3, ECF No. 40; Pla.'s CSF at p. 3, ECF No. 43).

**Defendant's Drug Policy Documents**

On July 29, 2008, Plaintiff signed a document entitled "Drug

3

and Alcohol Policy." (Drug and Alcohol Policy, attached at pp. 71-74 of Ex. A to Def.'s CSF, ECF No. 40-3). The same day, Plaintiff signed a document entitled "Conditions of Employment." (Conditions of Employment, attached at pp. 63-64 of Ex. A to Def.'s CSF, ECF No. 40-3). In the Conditions of Employment, Plaintiff acknowledged receipt of the Associate Handbook. Plaintiff signed a third document entitled "Associate Notification Letter" the same day. (Associate Notification Letter, attached at p. 75 of Ex. A to Def.'s CSF, ECF No. 40-3). Plaintiff acknowledged receipt of the Associate Handbook again on March 15, 2012. (Associate Acknowledgment, attached at p. 65 of Ex. A to Def.'s CSF, ECF No. 40-3). Plaintiff agrees that he was aware that he was expected to follow the Drug and Alcohol Policy and that a positive drug test could result in termination of his employment. (Def.'s CSF at p. 2, ECF No. 40; Pla.'s CSF at p. 2, ECF No. 43).

Defendant Marriott Resorts is a drug-free workplace. (Associate Notification Letter at p. 1, attached at p. 74 of Ex. A to Def.'s CSF, ECF No. 40-3; Drug and Alcohol Policy at p. 1, attached at p. 71 of Ex. A to Def.'s CSF, ECF No. 40-3). Defendant requires compliance with the Drug and Alcohol Policy as a condition of employment. (Associate Notification Letter at p. 1, attached at p. 74 of Ex. A to Def.'s CSF, ECF No. 40-3).

The Drug and Alcohol Policy requires that employees get

tested for drugs and alcohol following an on-the-job accident.
(Drug and Alcohol Policy, attached at p. 72 of Ex. A to Def.'s
CSF, ECF No. 40-3). The Drug and Alcohol Policy defines an on-
the-job accident as an incident that results in injury requiring
outside medical attention. (Def.'s CSF at p. 2, ECF No. 40;
Pla.'s CSF at p. 2, ECF No. 43). The Drug and Alcohol Policy
states that providing a sample "found to contain evidence of drug
or alcohol use ... will result in disciplinary action up to and
including termination." (Def.'s CSF at p. 2, ECF No. 40; Pla.'s
CSF at p. 2, ECF No. 43). The Drug and Alcohol Policy advises
that use of marijuana violates federal law and prohibits
marijuana use by employees, even if the employee has a
prescription. (Def.'s CSF at p. 2, ECF No. 40; Pla.'s CSF at p.
2, ECF No. 43).

**Plaintiff's Work and Health History**

David Nagao was Plaintiff's supervisor from the time
Defendant Marriott Resorts took over the Kauai Lagoons property
in 2007. (Mar. 9 Lambdin Depo. at p. 19, attached at p. 5 of Ex.
A to Def.'s CSF, ECF No. 40-3). Plaintiff asserts that Nagao
closely monitored him after the 2007 pesticide spray injury until
Plaintiff's termination. (Id. at pp. 96-99).

Nagao revoked Plaintiff's ability to order inventory in 2009
or 2010. (Mar. 9 Lambdin Depo. at pp. 102-03, attached at pp.

41-42 of Ex. A to Def.'s CSF, ECF No. 40-3).

In April 2010, Plaintiff had his right hip replaced. (Declaration of Barton Lambdin ("Lambdin Decl.") at p. 2, attached to Pla.'s CSF, ECF No. 43-1).  His left hip was replaced in May 2011.  (Id.)

In 2012, Plaintiff was disciplined for playing a guitar on a golf cart during his lunch time.  (Mar. 9 Lambdin Depo. at pp. 99-101, attached at pp. 38-40 of Ex. A to Def.'s CSF, ECF No. 40-3; Record of Conversation at p. 1, attached at p. 77 of Ex. A to Def's CSF, ECF No. 40-3).

Plaintiff was issued a warning for a "no-call, no-show" on February 20, 2013.  (Mar. 9 Lambdin Depo. at p. 104, attached at p. 43 of Ex. A to Def.'s CSF, ECF No. 40-3).

On May 28, 2013, Plaintiff's left hip was replaced a second time.  (Lambdin Decl. at p. 2, ECF No. 43-1).  Plaintiff states that his hip replacements hindered his ability to lift and work. Plaintiff asserts that because he was limited in his ability to lift and work, he falls within the legal definition of "disabled" pursuant to the Americans With Disabilities Act.  Plaintiff states that on June 28, 2012, he requested Defendant provide a lift or a hoist to accommodate his disability.  (Charge of Discrimination at p. 1, attached as Ex. 1 to Pla.'s CSF, ECF No. 43-2).

Plaintiff alleges that Defendant Marriott Resorts failed to

accommodate his disability.  Plaintiff states that on April 30,
2013 and October 4, 2013, he filed complaints of discrimination
with the Hawaii Civil Rights Commission and the Equal Employment
Opportunity Commission alleging that Defendant's failure to
provide a lifting device amounted to a denial of reasonable
accommodations for his disability.  (Amended Complaint at p. 3,
ECF No. 6).

Plaintiff states that it was standard procedure for
employees to record their daily activities in a logbook.  (Mar. 9
Lambdin Depo. at p. 81, attached at p. 29 of Ex. A to Def.'s CSF,
ECF No. 40-3).  Plaintiff wrote about his hip pain in the
logbook.  On July 31, 2012, Plaintiff wrote that his hip was
hurting in the logbook.  (Id.)  Nagao crossed out Plaintiff's
writings about his hip pain and wrote "tasks only!" in the book.
(Id. at pp. 85-86).  On August 8, 2012, Plaintiff wrote that his
left hip was hurting and swelling in his logbook.  (Id. at pp.
85-86).  Nagao did not write about that comment.  (Id.)
Plaintiff claims there were other occasions where he would write
about his hip pain in the logbook and Nagao would write responses
with what Plaintiff believed to be threatening language.  (Id.)

On January 9, 2014, Plaintiff's physician, Doctor Joseph
Murray, recommended that Plaintiff be considered for a medical
marijuana certificate. (Letter Dated Jan. 1, 2014, attached as
Ex. 2 to Pla.'s CSF, ECF No. 43-3).  On February 9, 2014, Doctor

Christopher Lawinski and social worker Matthew Brittain approved

Plaintiff for a medical marijuana certificate. (Letter Dated

Feb. 9, 2014, attached as Ex. 3 to Pla.'s CSF, ECF No. 43-4).

**Plaintiff's Panic Attack and Drug Test**

Plaintiff alleges that around February 17, 2014, Nagao read

something that he did not like in Plaintiff's logbook. (Mar. 9

Lambdin Depo. at p. 87, attached at p. 33 of Ex. A to Def.'s CSF,

ECF No. 40-3). Plaintiff states that on February 17, 2014, he

went to work and found his partially-completed logbook was

replaced with a new logbook. (Id.) The cover of the new logbook

included writing from Nagao instructing that the logbook was

supposed to be filled out daily by Plaintiff, and that only tasks

should be written in the logbook. (Deposition of Barton Lambdin,

dated Apr. 28, 2017 ("Apr. 28 Lambdin Depo.") at pp. 136-37,

attached at pp. 52-53 of Ex. A to Def.'s CSF, ECF No. 40-3).

Plaintiff states that he believed Nagao's language was

threatening. (Id.) Plaintiff states that Nagao had included a

chart inside the book to specify and limit what Plaintiff wrote

in the logbook. (Id.)

Plaintiff states that when he saw the logbook he suffered a

panic attack. (Mar. 9 Lambdin Depo. at pp. 87-88, attached at

pp. 33-34 of Ex. A to Def.'s CSF, ECF No. 40-3). Plaintiff was

transported from work at Defendant's property to the hospital by

ambulance. (Def.'s CSF at p. 3, ECF No. 40; Pla.'s CSF at p. 2,
ECF No. 43). In accordance with the Drug and Alcohol Policy,
Defendant had Plaintiff take a post-accident drug test on
February 18, 2014. (Def.'s CSF at p. 3, ECF No. 40; Pla.'s CSF
at p. 2, ECF No. 43). A urinalysis returned a positive finding
for marijuana. (Def.'s CSF at p. 2, ECF No. 40; Pla.'s CSF at p.
2, ECF No. 43).

On February 27, 2014, Defendant Marriott Resorts suspended
Plaintiff. (Disciplinary Action Form at p. 1, attached as Ex. 4
to Pla.'s CSF, ECF No. 43-5). On March 3, 2014, Plaintiff
appealed his suspension. (Appeal, attached as Ex. 6 to Pla.'s
CSF, ECF No. 43-7). On March 5, 2014, Defendant terminated
Plaintiff's employment. (Def.'s CSF at p. 3, ECF No. 40; First
Amended Complaint at p. 4, ECF No. 6).

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine
issue as to any material fact and the moving party is entitled to
judgment as a matter of law. Fed. R. Civ. P. 56(c). To defeat
summary judgment there must be sufficient evidence that a
reasonable jury could return a verdict for the nonmoving party.
Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir.
1997).

The moving party has the initial burden of "identifying for

the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. The moving party need not produce any evidence at all on matters for which it does not have the burden of proof. Celotex, 477 U.S. at 325. The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. That burden is met by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. Id.

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979). The opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Nidds, 113 F.3d at 916 (quoting Anderson v.

10

<u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the non-moving party. <u>State Farm Fire & Casualty Co. v. Martin</u>, 872 F.2d 319, 320 (9th Cir. 1989). Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed. Fed. R. Civ. P. 56(c); <u>Celotex</u>, 477 U.S. at 324. The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial. Fed. R. Civ. P. 56(e); <u>T.W. Elec. Serv.</u>, 809 F.2d at 630. The opposing party cannot rest on mere allegations or denials. Fed. R. Civ. P. 56(e); <u>Gasaway v. Northwestern Mut. Life Ins. Co.</u>, 26 F.3d 957, 959-60 (9th Cir. 1994). When the non-moving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact. <u>Hansen v. United States</u>, 7 F.3d 137, 138 (9th Cir. 1993); <u>see also</u> <u>National Steel Corp. v. Golden Eagle Ins. Co.</u>, 121 F.3d 496, 502 (9th Cir. 1997).

<u>**ANALYSIS**</u>

Defendant Marriott Resorts moves for summary judgment on all three claims stated in Plaintiff's First Amended Complaint.

**Count I** of the Complaint is a claim for discrimination and retaliation in violation of Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e *et seq*.  Plaintiff has withdrawn his Title VII discrimination claim.  Defendant Marriott Resorts' Motion for Summary Judgment as to Plaintiff's Title VII discrimination claims is **GRANTED**.

**Count III**[1] is a claim for retaliation in violation of the Americans With Disabilities Act, 42 U.S.C. § 12203.

**Count IV** is a claim for discrimination and retaliation in violation of the Hawaii Whistleblower's Protection Act, Haw. Rev. Stat. § 378-62.

## Count III: Retaliation in Violation of the Americans With Disabilities Act

Section 503(a) of the Americans With Disabilities Act prohibits employers from retaliating against an employee who has filed charges in opposition of an unlawful practice.  42 U.S.C. § 12203.

Courts analyze retaliation claims brought pursuant to the Americans With Disabilities Act by applying the burden-shifting analysis set forth by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Brown v. City of Tucson, 336 F.3d 1181, 1186 (9th Cir. 2003).

Under the McDonnell Douglas framework, the plaintiff is

---

[1] Plaintiff's First Amended Complaint does not include a "Count II".

first required to establish a *prima facie* case of retaliation.

See <u>Dawson v. Entek Int'l</u>, 630 F.3d 928, 936 (9th Cir. 2011).

If the plaintiff successfully establishes a *prima facie* case, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for its actions. <u>Id.</u> If the defendant satisfies its burden of showing a legitimate, non-discriminatory reason, the burden then shifts back to the plaintiff to prove that the legitimate, non-discriminatory reason offered by the defendant was not the employer's true reason, but was a pretext for impermissible discrimination. <u>Id.</u>

**<i>Prima Facie</i> Case of Retaliation**

In order to make out a *prima facie* case of retaliation, Plaintiff must show:

(1) He engaged in a protected activity;

(2) Defendant subjected him to an adverse employment action; and,

(3) a causal link existed between the protected activity and the adverse employment action.

<u>Brown</u>, 336 F.3d at 1187; <u>McAlindin v. Cnty. of San Diego</u>, 192 F.3d 1226, 1238 (9th Cir. 1999).

The Ninth Circuit Court of Appeals has recognized that a plaintiff alleging unlawful retaliation pursuant to the Americans With Disabilities Act must establish "but-for" causation, meaning the employee must demonstrate that he would not have suffered the

adverse employment action but for his engagement in protected activity.  <u>T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.</u>, 806 F.3d 451, 473 (9th Cir. 2015).

**Engagement in Protected Activity**

Plaintiff must show that he was engaged in an activity protected by the Americans With Disabilities Act.  The Americans With Disabilities Act prohibits retaliation because the individual made a charge against his employer.  42 U.S.C. § 12203(a).

Plaintiff engaged in a protected activity.  Plaintiff made two charges to the Equal Employment Opportunity Commission and the Hawaii Civil Rights Commission about his work environment in April and October 2013.

**Adverse Employment Decision**

An adverse employment decision is "any action reasonably likely to deter employees from engaging in protected activity." <u>Pardi v. Kaiser Found. Hosps.</u>, 389 F.3d 840, 850 (9th Cir. 2004).

Plaintiff must show the allegedly retaliatory actions was likely to deter Defendant's employees from engaging in protected activities.

**Causal Link**

The standard for the causal link is but-for causation.  <u>T.B.</u>
<u>ex rel. Brenneise</u>, 806 F.3d at 473.  Plaintiff must show that but
for his protected activity, Defendant would not have taken the
allegedly retaliatory actions.

**A.   Events That Do Not Establish A Prima Facie Case**

Plaintiff was engaged in a protected activity when he filed
charges against Defendant Marriott Resorts.  Federal law protects
individuals who "made a charge."  42 U.S.C. § 12203(a).  Making a
request for an accommodation and filing a claim with the Equal
Employment Opportunity Commission is a protected activity.
<u>Curley v. City of N. Las Vegas</u>, 772 F.3d 629, 633 (9th Cir.
2014).

Plaintiff alleges that after he requested a lift and filed
the charges against Defendant, he was subject to unfair treatment
culminating in his termination.  The unfair treatment allegedly
came in the form of Nagao bullying Plaintiff by scrutinizing his
work and Nagao writing threatening messages on Plaintiff's
logbook.  Plaintiff alleges the unfair treatment culminated in
Defendant suspending and eventually terminating Plaintiff's
employment.

**1.   Events Prior To Plaintiff's Charges Are Not
        Retaliatory**

Activities that happened before Plaintiff engaged in the

15

protected activity of filing the charges cannot be retaliatory. Kaulia v. Cnty. of Maui, Dep't of Pub. Works & Waste Mgmt., 504 F.Supp.2d 969, 991 (D. Haw. 2007) (there was no causal connection where the alleged retaliation occurred well before the Plaintiff filed his administrative complaint).

Nagao's actions prior to April 30, 2013 cannot be in retaliation for Plaintiff filing the charges. Nagao's revocation of Plaintiff's ability to order parts, the write up for the no-call, no-show, and the discipline pertaining to Plaintiff playing the guitar cannot, as a matter of law, be retaliatory.

### 2.    The Alleged Scrutiny Is Not Retaliatory

Plaintiff alleges that Nagao was more strict with his work than that of other workers. Plaintiff fails to establish a causal link between his protected activity and Nagao's scrutiny of Plaintiff's work.

Plaintiff states that Nagao had kept a close eye on Plaintiff since the pesticide spray accident in 2007. (Mar. 9 Lambdin Depo. at pp. 97-98, 102, attached at pp. 36-37, 41 of Ex. A to Def.'s CSF, to ECF No. 40-3). Plaintiff admits that he believes the scrutiny was in response to the 2007 accident. (Id.) The pattern of scrutiny began approximately five years before Plaintiff engaged in protected activity.

Plaintiff fails to allege or provide evidence that Nagao's

16

scrutiny was due to Plaintiff's filing of charges against Defendant. Plaintiff fails to allege or provide evidence that Nagao's scrutiny changed after Plaintiff filed charges against Defendant Marriott Resorts.

**B.    Plaintiff Establishes A *Prima Facie* Case Of Retaliation**

**1.    Writings In The Logbook**

Plaintiff alleges that Nagao required him to write in a daily task journal or logbook. Plaintiff alleges that on June 28, 2012, he requested Defendant provide a lift or a hoist to accommodate his disability. On July 31, 2012, Plaintiff attempted to record that he was suffering pain as a result of Defendant's failure to provide a lift. Plaintiff states that Nagao crossed out the writing and wrote that Plaintiff was only allowed to make entries regarding tasks. Plaintiff states that he took Nagao's writings in the logbook to be threatening. Plaintiff alleges that on other occasions Nagao wrote notes telling Plaintiff to only write tasks in the logbook. Plaintiff alleges that one such occasion was on February 17, 2014, which Plaintiff took as threatening.

Plaintiff establishes that after he made a request for an accommodation, Nagao attempted to restrict Plaintiff's recording the results of Defendant's failure to provide a lift.

###        2.    Suspension And Termination

Termination is an adverse employment action.  See, e.g.,
McAllister v. U.S. Veterans Initiative, No. Civ. 14-00057 SOM,
2015 WL 2345595, at *12 (D. Haw. May 14, 2015) ("Termination
certainly constitutes an adverse employment action").  Plaintiff
establishes that he was suspended in February 2014 and terminated
in March 2014.

Plaintiff has established a *prima facie* case of retaliation.
According to Plaintiff, after he made a request for
accommodation, Nagao attempted to limit Plaintiff's ability to
record the effects of the failure to accommodate.  Plaintiff
asserts that Nagao prohibited Plaintiff from writing in the log
book about his pain and his need for accommodations.  The
limitation, when paired with the adverse employment action of
termination, establishes a *prima facie* case of retaliation.

### C.    Defendant Establishes A Legitimate, Nondiscriminatory
###       Cause For Termination

Plaintiff has established a *prima facie* case of retaliation.
The burden shifts to Defendant Marriott Resorts to provide a
legitimate, nondiscriminatory reason for terminating Plaintiff's
employment.  Defendant provides that Plaintiff was terminated for
failing a post-accident drug test.

## 1. Defendant Was Permitted To Conduct A Drug Test

The Drug and Alcohol Policy established that a drug test is required if an associate is associated with an on-the-job accident. (Drug and Alcohol Policy, attached at p. 71 of Ex. A to Def.'s CSF, ECF No. 40-3). The Drug and Alcohol Policy defines an accident as "an incident that results in injury which requires outside medical attention." (Id.)

The parties agree that Plaintiff suffered a panic attack while at work on February 17, 2014, and was transported to the hospital by ambulance to obtain medical treatment. (Def.'s CSF at p. 3, ECF No. 40; Pla.'s CSF at p. 2, ECF No. 43). After the incident, Plaintiff provided a urine sample for the drug test. (Def.'s CSF at p. 3, ECF No. 40; Pla.'s CSF at p. 2, ECF No. 43). The urinalysis test was positive for marijuana.

## 2. Defendant Was Permitted To Terminate Plaintiff's Employment Pursuant To Its Drug And Alcohol Policy And Conditions Of Employment

Defendant Marriott Resorts prohibited the use of illegal drugs by its employees. Defendant explicitly established that a positive test after an on-the-job accident is cause for termination. The Drug and Alcohol Policy warned:

> Providing a urine and/or breath specimen that is found
> to contain evidence of drug or alcohol use, without a
> satisfactory explanation, will result in disciplinary

action up to and including termination.

(Drug and Alcohol Policy, attached at p. 71 of Ex. A to Def.'s

CSF, ECF No. 40-3).

The Drug and Alcohol Policy states under the acknowledgment

and consent section:

> I understand that Marriott reserves the right to
> conduct drug tests and/or alcohol tests and that a
> positive finding of such a test may subject me to
> disciplinary action up to and including discharge.

(<u>Id.</u> at p. 73).

The Drug and Alcohol Policy specifically prohibits the use

of marijuana:

> The use of marijuana by prescription . . . has not been
> approved by the Food and Drug Administration and is a
> violation of federal law.  Use of marijuana is a
> violation of the Federal Drug Free Workplace Act.  The
> use of THC-containing products such as hemp oil that
> will produce a positive urinalysis is also prohibited.

(<u>Id.</u> at pp. 72-73).

In the Conditions of Employment document, Plaintiff signed a

statement that reads:

> I further understand that: I may be discharged without
> any prior warning if I commit any of the following
> acts: ... Possession, use or being under the influence
> of illegal substances while on company time and/or
> premises."

(Conditions of Employment, attached at p. 64 of Ex. A to Def.'s

CSF, ECF No. 40-3).

A similarly-worded warning is repeated twice in the

Associate Handbook.  (Associate Handbook at pp. 27, 30 attached

20

at pp. 68, 70 of Ex. A to Def.'s CSF, ECF No. 40-3).

Defendant claims it suspended Plaintiff for testing positive for marijuana in the post-accident drug test. (Disciplinary Action Form at p. 1, attached as Ex. 4 to Pla.'s CSF, ECF No. 43-5). The Disciplinary Action Form described the cause of suspension:

> On 02/25/2014, we received the results of a post-accident drug screening in which Barton Lambdin tested positive for marijuana. . . . Compliance with the company's Drug and Alcohol policy is a condition of employment. An associate who tests positive for drugs for a post-accident drug test will be subject to disciplinary action up to and including termination. Per company policy, Barton is being suspended pending investigation....

(Id.)

### a.   Federal Law

Federal law classifies marijuana as a Schedule I substance. 21 U.S.C. § 812. Federal law prohibits the use of marijuana, even for medical purposes. 21 U.S.C. § 844(a). It is a violation of Federal law to use marijuana, even in cases where a state law allows medical marijuana use. See Gonzales v. Raich, 545 U.S. 1, 29 (2005).

### b.   State Law

Hawaii law requires that medical marijuana users register with the state. Haw. Rev. Stat. § 329-123. At the time of the events giving rise to this case, the applicable Hawaii

Administrative Rules established that a medical marijuana user must register with the Narcotics Enforcement Division. H.A.R. § 23-202-4(b). The Administrative Rules prohibited marijuana use without a registration certificate issued by the Narcotics Enforcement Division. H.A.R. § 23-202-6(d).

Plaintiff states that he did not yet have the certification from the Narcotics Enforcement Division on the day he took his drug test. (Mar. 9 Lambdin Depo. at p. 54, attached at p. 19 of Ex. A to Def.'s CSF, ECF No. 40-3). Defendant Marriott Resorts provides a copy of what appears to be Plaintiff's application to the Narcotics Enforcement Division, dated February 9, 2014. (Written Certification, attached as Ex. A to Declaration of Tamara S.I. Whitney, ECF No. 40-4). A stamp on the form indicates that the Narcotics Enforcement Division received the application on February 24, 2014. (Id.)

Plaintiff claims that he failed the post-accident drug test because he smoked marijuana on February 12, 2014. Plaintiff could not have been approved for medical marijuana use twelve days before his application was received by the Narcotics Enforcement Division. Plaintiff fails to show that he was lawfully using marijuana pursuant to Hawaii State Law.

Defendant terminated Plaintiff's employment on March 5, 2014. Defendant stated the cause for termination was because Defendant prohibits employees from being under the influence of

drugs at work, including marijuana. (Appeal, attached as Ex. 7 to Pla.'s CSF, ECF No. 43-8).

Defendant has satisfied its burden of showing a legitimate, non-discriminatory reason for terminating Plaintiff's employment.

## C.  Plaintiff Fails To Provide Evidence Of Pretext

Defendant Marriott Resorts has provided a legitimate, non-discriminatory reason for suspending and terminating Plaintiff's employment.  The burden shifts back to Plaintiff to prove that the reason offered by Defendant was not the true reason, but was a pretext for impermissible discrimination.

A plaintiff "can show pretext directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence." Vasquez v. County of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2003).  Direct evidence is usually composed of "clearly ... discriminatory statements or actions by the employer." Coghlan v. Am. Seafoods Co. LLC, 413 F.3d 1090, 1094-95 (9th Cir. 2005).  Circumstantial evidence constitutes "evidence that requires an additional inferential step to demonstrate discrimination." Id. at 1095.  A plaintiff's circumstantial evidence must be both specific and substantial in order to survive summary judgment.  Becerril v. Pima Cnty. Assessor's Office, 587 F.3d 1162, 1163 (9th Cir. 2009).

Plaintiff fails to provide evidence of pretext.  Plaintiff advances three theories of pretext, but does not provide sufficient direct or circumstantial evidence to support his theories.

### 1.   Defendant Reasonably Believed That Plaintiff's Panic Attack Was An Injury

First, Plaintiff argues that his panic attack that required him to be taken to the hospital by ambulance was not an "accident" and the panic attack was not an "injury."  Plaintiff argues that the post-accident drug test administered after he was taken to the hospital by ambulance "seems pretextual."  (Pla.'s Opposition at p. 11, ECF No. 44).

The standard for judging an employer's action is if the employer honestly believed its reasons for taking an action. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1063 (9th Cir. 2002).  Here, it is objectively reasonable that Defendant Marriott Resorts believed the panic attack required Plaintiff to be taken to the hospital by ambulance.  Plaintiff provides no evidence to show that Defendant did not honestly believe that his panic attack required medical attention.

### 2.   The Application Of The Employee Handbook

Plaintiff's second assertion is that the employee handbook's provisions are merely guidelines, and Defendant was not required

to terminate his employment.  (Pla.'s Opposition at p. 11, ECF No. 44).

The guidelines of the employee handbook apply to Plaintiff. A plain-text reading of the terms provides that Defendant had the power and discretion to terminate employees for testing positive on a post-accident drug test.

### 3.    The Influence Of Marijuana

Plaintiff's final assertion is that he was wrongfully terminated for being "under the influence" of marijuana. Plaintiff avers that because marijuana stays in the body for several days, he could test positive for marijuana while not actually being "under the influence" of marijuana.

Defendant Marriott Resorts is a drug-free workplace.  As such, Defendant may prohibit the use of illegal drugs by its employees.  See, e.g., 42 U.S.C § 12114(a) (the ADA provides no protection from retaliation for an employee "who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use"); Coats v. Dish Network, LLC, 350 P.3d 849, 853 (Colo. 2015) (holding that an employer could terminate an employee for his state-approved medical marijuana use at home); Roe v. TeleTech Customer Care Mgmt. (Colorado) LLC, 257 P.3d 586, 597 (Wash. 2011) (en banc).

A state law decriminalizing marijuana use does not create an

affirmative requirement for employers to accommodate medical marijuana use. See Garcia v. Tractor Supply Co., 154 F.Supp.3d 1225, 1230 (D. N.M. 2016)("the fact that the state may exempt medical marijuana users from the reach of the state criminal law does not mean that the state can affirmatively require employers to accommodate what federal law specifically prohibits"); Emerald Steel Fabricators, Inc. v. Bureau of Labor & Indus., 230 P.3d 518, 535-36 (Or. 2010)(en banc); Ross v. RagingWire Telecommunications, Inc., 174 P.3d 200, 202-03 (Cal. 2008).

Defendant Marriott Resorts' Motion for Summary Judgement as to Plaintiff's retaliation claims pursuant to the Americans With Disabilities Act is **GRANTED**.

## Count IV: The Hawaii Whistleblower's Protection Act

State of Hawaii Courts have adopted the McDonnell Douglas burden shifting analysis to claims brought pursuant to Haw. Rev. Stat. § 378-62. See, e.g., Taguchi v. State, Dept. of Health, 290 P.3d 546, at *1 (Haw. Ct. App. 2012). For the same reasons set forth as to Count III, summary judgment is warranted on Count IV of Plaintiff's Complaint.

Defendant Marriott Resorts' Motion for Summary Judgment as to Plaintiff's retaliation claims pursuant to the Hawaii Whistleblower's Protection Act is **GRANTED**.

## **CONCLUSION**

Defendant Marriott Resorts Hospitality Corporation's Motion for Summary Judgment (ECF No. 39) is **GRANTED** as to all counts.

The Clerk of the Court is **DIRECTED** to **CLOSE THE CASE**.

IT IS SO ORDERED.


DATED:    September 14, 2017, Honolulu, Hawaii.



_____
Helen Gillmor
United States District Judge

Barton L. Lambdin v. Marriott Resorts Hospitality Corporation,
Civ. No. 16-00004 HG-KJM; **ORDER GRANTING DEFENDANT MARRIOTT
RESORTS HOSPITALITY CORPORATION'S MOTION FOR SUMMARY JUDGMENT
(ECF No. 39)**